CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN - 9 2017

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMAR ANTWAUN GLADDEN, | ) | Civil Action No. 7:16-cv-00519 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHARLOTTESVILLE VA | ) | |
| POLICE DEPT, et al., | ) | By:  Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Jamar Antwaun Gladden, a Virginia inmate proceeding pro se, commenced a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants: the Charlottesville, Virginia, Police Department ("Department"); Officer R.A. Oberholzer; Officer J. Seitz; Detective T.A. Lucas; and the JADE Task Force. Plaintiff alleges that the officers used excessive force during arrest in violation of the Fourth Amendment of the United States Constitution. Defendants filed motions to dismiss and a motion for a more definite statement, and Plaintiff responded with additional facts. This matter is now ripe for disposition.[1] After reviewing the complaint, I deny as moot the motion for a more definite statement, deny Oberholzer's motion to dismiss, and grant the other defendants' motions to dismiss.

I.

The complaint alleges the following:

> I was with my 3 children when . . . [Officer Oberholzer] asked me to step out of my vehicle. I stepped out[,] went to [the] back of [the] car as instructed [and] was immediately grabbed from behind in a choke hold, t[a]ken to the ground[,] and could not breath. JADE Task Force . . .

---

[1] A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Consequently, I treat Plaintiff's response to the motion for a more definite statement as a supplement to the complaint and deny as moot the motion for a more definite statement. Defendants Seitz, Lucas, and Oberholzer have responded to the allegations in that supplement, ECF Nos. 38-40, and the supplement does not address the capacities of the JADE Task Force or Charlottesville VA Police Dept. Thus, no unfair prejudice results from adjudicating defendants' dispositive motions.

> [officers J. Seitz and T.A. Lucas] assisted. I was kicked, kneed, and was a victim of unnecessary force. . . . I suffered a chipped front tooth, 3 stitches in [the] right eye, and dislocated shoulder. . . . No weapons or narcotics involved during arrest[.] Had previous run in w[ith] same of[ficer] . . . [It was [w]eird [how] he acted the way he did!!!

Plaintiff seeks a public apology and $2.5 million.

Defendants filed motions to dismiss and a motion for a more definite statement. In response to the motion for a more definite statement, Plaintiff further described the pertinent events as follows:

> Officer Oberholzer put me in a choke hold with his arm around my neck/throat, never reaching for my hands or arms making a[n] attempt to arrest or detain me. Just a[n] immediate instinct reaction to put his arm around my throat and to throw his body weight against me and we immediately went crashing to the ground (his stomach to my back). Officer Oberholzer layed on top of me while still continuing to squeeze his arm tighter around my throat, in which at this time it was extremely hard for me to breathe. I was beginning to lose consciousness when a number of "Jon Doe" detectives of JADE Task Force also appeared on the scene and begun to physically and maliciously plant knees and feet on my body while still on my stomach with Officer Oberholzer's arm around my throat. Along with said "John Doe" detectives of JADE Task Force, Detectives McCall, Seitz, and Lucas begun to become overly aggressive when "John Doe Detective" of JADE Task Force started to holler "Knife, knife[!]" Again, I was on my stomach. [I] believed I blacked out slightly at some point[] so I wasn't able to see the above named JADE Task Force members or the John Doe Detectives' faces at the time when a foot, knee or whatever force that came down on the back of my head to make my face make contact with the ground. . . .
>
> Before being sat up, Officer Oberholzer kicked me after I was already being handled by JADE Task Force Detectives John Does and cuffed. . . . At no time did I offer a reason for this inhumane attack on me. . . .

## II.
### A.

Defendants filed motions to dismiss pursuant to Rule 12(b)(2) and (b)(6). Once a defendant raises a personal jurisdiction challenge under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.

2

1989). Under Rule 12(b)(6), I must dismiss an action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted even after accepting a plaintiff's factual allegations as true. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

1. JADE Task Force

The JADE Task Force argues that it is not a "person" subject to § 1983. A group of persons, like a task force of officers from various jurisdictions, is not a "person" subject to 42 U.S.C. § 1983. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); Ferguson v. Morgan, No. 1:90cv06318, 1991 U.S. Dist. LEXIS 8295, at *3-4, 1991 WL 115759,

3

at *1 (S.D.N.Y. June 20, 1991) (concluding that a group of personnel, like "medical staff," is not a "person" for purposes of § 1983). Accordingly, Plaintiff cannot proceed against the JADE Task Force via § 1983, and its motion to dismiss is granted.

2. The Department

The Department also argues that it is not a "person" subject to § 1983. In federal courts, the capacity of a governmental body to be sued is governed by the law of the state in which the district court sits. Fed. R. Civ. P. 17(b); Avery v. Burke Cnty., 660 F.2d 111, 113-14 (4th Cir. 1981). "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." Muniz v. Fairfax Cnty. Police Dep't, No. 1:05CV466 (JCC), 2005 U.S. Dist. LEXIS 48176, at *4, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) (citing Davis v. City of Portsmouth, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), aff'd, 742 F.2d 1448 (4th Cir. 1984)). Plaintiff fails to establish that either the Commonwealth of Virginia or the City of Charlottesville has vested the Department with the capacity to be sued.[2] Accordingly, Plaintiff cannot proceed against the Department via § 1983, and its motion to dismiss is granted.

**B.**

The claims that Oberholzer, Seitz, and Lucas used excessive force during an arrest implicate the Fourth Amendment right against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 388 (1989). In deciding whether a Fourth Amendment violation occurred, courts must

---

[2] Furthermore, the complaint fails to state a claim involving a harm pursuant to execution of government policy or custom, and respondeat superior is not inapplicable via § 1983. See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); see also Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000) (noting police officers violation of the Fourth Amendment does not give rise to municipal liability where the record contains no evidence that the alleged deprivation occurred because of a custom or practice); Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999) (holding that a "meager history" of isolated incidents does not establish a municipal custom). Accordingly, the claims against the Department are dismissed without prejudice pursuant to 42 U.S.C. § 1983.

4

balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). An officer's actions are judged by an objective standard based on the totality of the circumstances. Graham, 490 U.S. at 397. The perspective is "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. Thus, a court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." Id.

1. Seitz & Lucas

The pertinent allegation involving Seitz and Lucas were that they "assisted" Oberholzer with restraining Plaintiff after Oberholzer already had Plaintiff pinned on the ground in a choke hold. Plaintiff clarifies in his supplement that Seitz and Lucas became "overly aggressive" when an officer yelled, "Knife, knife!" The reliance on labels and conclusions of "overly-aggressive" to describe Seitz's and Lucas' alleged conduct does not adequately describe a violation of a Fourth Amendment interest relative to governmental interests. Accordingly, Seizt's and Lucas' motions to dismiss must be granted.

2. Oberholzer

Oberholzer's motion to dismiss must be denied. Based on viewing the allegations as true and in a light most favorable to Plaintiff, the complaint, as supplemented, states a violation of the Fourth Amendment by Oberholzer. During a traffic stop not involving firearms or narcotics, Plaintiff peacefully complied with Oberholzer's instructions to exit the vehicle, walk to the back

of the car, and then turn his back to Oberholzer. Once Plaintiff turned away from Oberholzer as instructed, Oberholzer allegedly began choking Plaintiff from behind without provocation or warning, never attempted to restrain Plaintiff's hands, pushed Plaintiff to the ground, and continued to choke Plaintiff until Plaintiff began to lose, or did lose, consciousness. Once other officers had restrained Plaintiff and sat him upright, Oberholzer allegedly kicked Plaintiff unnecessarily. As a consequence of Oberholzer's force, Plaintiff suffered a chipped front tooth, a dislocated shoulder, and a cut near his right eye treated with stitches. Accordingly, Oberholzer's motion to dismiss is denied, and Oberholzer shall file a motion for summary judgment supported by affidavit(s) pursuant to Standing Orer 2013-6.

### III.

For the foregoing reasons, I deny as moot the motion for a more definite statement and grant all defendants' motions to dismiss except for Oberholzer's motion. Oberholzer will file a motion for summary judgment within thirty days.

ENTER: This ____ day of June, 2017.

_____
Senior United States District Judge